## MAYOR AND CITY COUNCIL OF BALTI-MORE *v.* POLAKOFF

[No. 111, September Term, 1963.]

2

*Decided November 11, 1963.*

*Motion for rehearing filed December 11, 1963, denied December 12, 1963.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

*John A. Dewicki, Assistant City Solicitor,* with whom were *Joseph Allen, City Solicitor,* and *George W. Baker, Jr., Deputy City Solicitor,* on the brief, for appellant.

*Allan J. Malester,* with whom were *Robert L. Sullivan, Jr.,* and *Sklar & Sullivan* on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

A now familiar theme is played once again in this case. An applicant for high density use of land (by way of special exception), who had been challenged successfully by protesting neighbors before the Board of Municipal and Zoning Appeals of Baltimore, seeks in this Court to sustain the decision of the

Baltimore City Court, which reversed the Board and granted the exception.

Herschel H. Polakoff, the appellee, bought a large residence on the south side of Clarks Lane at Gist Avenue, known as 3809 Clarks Lane, on a lot bordering the Lane for one hundred seventy feet and running along the east side of Gist Avenue for two hundred seventy-eight feet, knowing that under the Baltimore zoning ordinance the lot's forty-seven thousand two hundred sixty square feet would support the housing of but eighteen families but intending to seek a special exception from the Board to permit thirty-two families in a four-story and penthouse luxury elevator apartment.

The special exception was sought under the elasticity provided by Sec. 32 of the Baltimore City Zoning Ordinance entitled "Special Area Exceptions." It authorizes the Board after notice and hearing "in its discretion, in a specific case, and subject to the provisions, guides and standards set forth in Section 35 (j)," (the quoted language being hereinafter sometimes referred to as the "statutory exception standards") and upon compliance with "front, side, rear yard percentage of lot requirements and the requirements of sub-section 25B" to permit "(c) In an E Area District, which is in a forty-foot height district, an apartment house, not exceeding four stories in height, to house not more than forty families per acre," if the building is situated not less than fifty feet from any lot line. Sec. 35 (j) provides that where in the article, the Board is authorized to make special exceptions or variances, it shall give approval only where the proposed building, use, change, size or density "shall not create hazards from fire or disease or shall not menace the public health, security, or morals." The Board is directed "when passing upon applications relating to area" to give "consideration to items (a) to (n), inclusive of Sec. 22 insofar as they or any of them may relate thereto."

Before the Board the applicant produced expert and official testimony to show that there was a trend to apartment living in the upper Park Heights Avenue area, a need for luxury type apartments to supplement the many existing garden type buildings, that the proposed apartment house was well planned and designed and attractive, a parking space for each apartment

unit had been provided, adequate public services were available, traffic was no problem, the building would harmonize with the adjacent structures and have no adverse effect on values of surrounding properties or on the neighborhood, otherwise, the proposed use was the highest and best use of the land but such use could not be justified economically unless the increased density was allowed, and that the Board had previously granted a special exception for a four-story luxury apartment with a density increase by special exception from twenty-six to forty-eight families a block away on the opposite side of Clarks Lane.

The protestants claimed there was a traffic hazard at Clarks Lane and Gist Avenue, which they said had long been a dangerous intersection, that the residents of the area were almost all two-car families and there was already insufficient available parking space, a deficiency which would be aggravated by the parking of the residents of the new units, who would, they suggested, undoubtedly be owners of two cars and that the new building would depreciate values. Their claims for the most part were unsupported by specifics or documented facts.

The Board refused to allow the special exception, saying:

"In approving an apartment house of this type the Board must consider Section 22 (a) to (n), which involves considering, among other things, the traffic problems, protection of occupants of buildings from noise, dust and gas caused by traffic, hazards from fire and disease and the density of population in the area.

"The Board is of the opinion that the approval of this application would not be justified at this location and would be detrimental to the health, safety and welfare of the community. The Board finds no reason to exercise their discretionary power in this case."

The applicant appealed to the Baltimore City Court. Judge Foster remanded the case to the Board with directions to state specifically its reasons for denying the exception. The Board complied, stating it had previously granted exceptions to the density requirements for the construction of apartment houses "only on lots to the east of the proposed building site," and said its finding was that "there was no testimony in the instant case

that would warrant a further increase in the population density requirements of the Zoning Ordinance on this side of the street." It went on to say: "The testimony makes it clear that the intersection of Clarks Lane and Gist Avenue is a very dangerous one and that there was no need or justification for additional apartments that would intensify this situation * * *. We cannot over-emphasize the fact that this was a request for an increase in density from 18 to 32 units, which is nearly double the permitted number of apartments for this lot." The Board then reiterated its consideration of paragraphs (a) to (n) of Sec. 22 of the zoning ordinance and its conclusion that "in their discretion" approval of the application was not justified "since it would not promote the health, security, morals and general welfare of the community * * *."

Judge Foster reversed the Board. He said:

"I * * * interpret Section 32 to mean that the Board must grant an exception unless it can demonstrate from the evidence before it that such action would not fall within the provisions, guides and standards of Section 35 (j), qualified by Section 22(a) to (n). The Board must have evidence on which to base its resolution of denial."

He then analyzed the testimony before the Board and found that there was no probative evidence of traffic dangers and that the other determinations of the Board, including those (a) that there was no need or justification for further increase in population density on the south side of Clarks Lane, (b) the relatively sharp percentage increase sought and (c) the inharmony of the proposed building with nearby existing structures, were no more than conclusions.

We need not pass on the soundness of the court's finding of lack of factual support for the Board's determinations for, in our view, prior decisions of this Court have put on the special exceptions provisions of the Baltimore City Zoning Ordinance an established and firmly adhering gloss which requires an applicant for a special exception, if he is to prevail, to show far more than Mr. Polakoff was able to, or did, show the Board.

In *Heath v. Mayor & C. C. of Balto.*, 190 Md. 478, the

Board had granted and the lower court had affirmed a permit for the building of another garage near an apartment house, which would have been more than the general law allowed on the property, on the claim of the owner of the apartment house that there was needed a garage for each of the apartments in his building (there being no available garages in the vicinity). The permit was sought under the stretch provisions of what is now Sec. 16 of the Baltimore zoning ordinance (then Sec. 14) headed "Garages—Special Exceptions," which contained the statutory exception standards in language identical with that in the present Sec. 32 of the ordinance. This Court reversed, saying that in each case the Board must analyze the evidence to see if there is shown a need for the applied for exception "of such urgency that injustice will result if the exception to the rule is not applied." The opinion went on to say (p. 483 of 190 Md.):

> "If by applying the general rule a reasonable use of land results, the exception to the rule should not apply. The need to justify the exception must be real and substantial. If an exception to the general rule is permitted for reasons that are not urgent and substantial, but for mere convenience, then a provision of the ordinance for an exception might cease to be such and, in practice, become the rule."

The philosophy implicit in *Heath's* reading of the ordinance was expressed in *City of Baltimore v. Byrd*, 191 Md. 632, which struck down a special ordinance granting an exception to the general zoning ordinance. The Court said (at p. 638):

> "* * * when the legislative body of a municipality adopts a comprehensive zoning plan, exceptions should be allowed only in such cases as are clearly exceptions in fact to the purposes of the ordinance, and without which there would be imposed a burden upon the owner of the property not justified by considerations of the public health, safety and welfare."

*Easter v. City of Baltimore*, 195 Md. 395, was a case in which the Board and the lower court approved the granting of a spe-

cial exception which would have allowed a store front to be brought out to the building line in contravention of the zoning provisions of Baltimore as to front yard depth and percentage of occupancy of lot, under what is now Sec. 36 (c) of the ordinance (then Sec. 33 (c)) allowing a special exception for the granting of a permit "when there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of any of the provisions of this Article" provided consideration is given to "the rules, regulations, restrictions, guides and standards set forth elsewhere in this Article, and especially to Sections 2, 18, 22 and 35 (j)." The judgment was reversed. Judge Henderson said for this Court (p. 399) : "The power to grant exceptions must be strictly construed," (citing *Colati v. Jirout,* 186 Md. 652, a case involving the extension of a nonconforming use under what is now Sec. 14 of the ordinance) and added:

> "The burden of showing facts to justify an exception or variance rests upon the applicant, and it must be shown that the hardship affects the particular premises and is not common to other properties in the neighborhood * * *. The mere fact that the variance would make the property more profitable is not a sufficient ground * * *."

*Gleason v. Keswick Impvt. Ass'n,* 197 Md. 46, dealt with the present Sec. 14 (d) which was then Sec. 12 (c), under the general heading "Use District Special Exceptions." Paragraph (d) authorizes, within one hundred feet of a boundary line between two use districts, any use permitted in that one of the districts which has a lower classification, if the Board so permits in its discretion, subject to the usual statutory exception standards. The Board, in a split decision, had granted the exception to permit the use of a residence as a store and the Baltimore City Court had reversed. This Court affirmed the lower court, saying (p. 50) :

> "It may be noted that a special exception will never be granted to gratify a convenience, and not only must the necessity be urgent, but the facts in a given case must be so extraordinary as to persuade us to

withdraw the case from application of the accepted rule."

Although the section of the ordinance there involved did not, in terms, require a showing of hardship as a prerequisite to relief (as does what is now Sec. 36, then Sec. 33), the opinion added:

> "We think it a fair inference that the appellants bought this property with the intention to change its classification so as to permit its use as a store, and they cannot claim now that they suffer a peculiar hardship that entitles them to the special privilege which they seek." (p. 51)

*Cleland v. City of Baltimore,* 198 Md. 440, made the same holding in a non-conforming use extension case (Sec. 14), as did *Dampman v. M. and C. C. of Balto.,* 231 Md. 280. See also *Carney v. City of Baltimore,* 201 Md. 130.

In *Serio v. City of Baltimore,* 208 Md. 545, the one hundred foot provision was again invoked to support an application for a gasoline station in a residential district. The refusal to grant the exception by the Board and the Baltimore City Court was affirmed. We said that the relief sought under Sec. 14 (d) of the ordinance — which contained the statutory exception standards— should be granted only if the "practical difficulties or unnecessary hardships" standards of Sec. 36 (c) are gratified, citing *Gleason, Easter* and *Heath,* (190 Md. 478).

*Montgomery Co. v. Merlands Club,* 202 Md. 279, 288, noted that a distinction is usually made in zoning ordinances between, on the one hand, an exception which makes a specified deviation from the general rule prima facie valid (without a showing of hardship) unless the body to whom discretion is confided by the legislature, state or local, finds in a particular case that the deviation would be inharmonious with the purposes of the ordinance and, on the other hand, a variance, which is authorized only where a literal enforcement with the general provisions would result, in a given situation, in unnecessary hardship.

*Marino v. City of Baltimore,* 215 Md. 206, 216, pointed out the marked distinction generally made between an exception

and a variance, as discussed in *Merlands,* and said there is no such distinction made in the Baltimore City Zoning Ordinance. The opinion added: "This is the reason why many cases which arise in Baltimore City, such as this one, discuss exceptions and variances without differentiation." *Baltimore v. Sapero,* 230 Md. 291, 295, said: "In Baltimore City the terms (exception and variance) are used interchangeably, without differentiation." *Dampman v. M. and C. C. of Balto., supra,* repeated (p. 285): "In Baltimore City there appears to be no distinction between the two terms [exception and variance] * * *."

No prior case in this Court appears to have required interpretation of the meaning of Sec. 32—the area exception provision here involved. We think it must be construed as have the other exception sections of the ordinance. Its purpose, the power given the Board to exercise its discretion and the guiding standards (the statutory exception standards) are indistinguishable (where not identical) from the corresponding purposes and provisions of Secs. 14 (b), 14 (d) and 16, all of which have been held not to authorize a granting for the mere convenience to the owner but to require a showing of urgent necessity, hardship peculiar to the particular property, and a burden upon the owner not justified by the public health, safety and welfare.

Mr. Polakoff did not meet the burden he bore as an applicant, showing no more than that the granting of the exception would do no harm and be a profitable convenience to him. Under the cases this is not enough. The testimony before the Board—or the lack of it—warranted its statement in support of its refusal to grant the desired exception that there was no testimony in the case which "would warrant a further increase in the population density requirements of the zoning ordinance."

The earlier granting of a special exception for an increase in density for a similar apartment house a block away does not aid the applicant. The record does not show whether the evidence in that case met the required standards but if it be assumed that it did not, *Easter v. City of Baltimore, supra,* at page 400 of 195 Md., adopted the following language of a New Jersey Court: "Prior exceptions granted by the adjustment board are not in themselves controlling. Ill-advised or illegal

10

variances do not furnish grounds for repetition of the wrong." See also *Marino v. City of Baltimore, supra* (at p. 220 of 215 Md.) and *Park Shopping v. Lexington Park,* 216 Md. 271, 276.

*Order reversed, with costs.*