PEM CONSTRUCTION COMPANY *v.* MAYOR
AND CITY COUNCIL OF BALTIMORE

(Two Appeals in One Record)

[No. 108, September Term, 1963.]

*Decided January 28, 1964.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

*Sol C. Berenholtz* for the appellant.

*John A. Dewicki, Assistant City Solicitor of Baltimore,* with whom were *Joseph Allen, City Solicitor,* and *George W. Baker, Jr., Deputy City Solicitor,* on the brief, for the appellee.

SYBERT, J., delivered the opinion of the Court.

A developer appeals from a decision of the Baltimore City Court which affirmed a resolution of the Board of Municipal and Zoning appeals denying a variation or special exception so that two adjoining parcels of land located in a D-40 residential area could be used as parking lots for a nearby shopping center.

The appellant, Pem Construction Company, is the owner of both parcels, one known as 5451 Tippett Avenue (referred to on a plot plan as Parcel No. 2), and the other as 5401-43 Tippett Avenue (referred to on the plot plan as Parcel No. 3). Tippett Avenue, 50 feet wide, runs in an east-west direction.[1] Parcel No. 2 has a frontage on the north side of Tippett Avenue of about 233 feet, and is about 100 feet in depth. Parcel No. 3, to the east of Parcel No. 2 (the two tracts being separated by a 15 foot right of way), fronts approximately 192 feet on the north side of Tippett Avenue and has a depth of 85 feet. Reisterstown Road, an arterial highway, is one block south of Tippett Avenue and runs parallel thereto. One block north, and parallel to Tippett Avenue, is Price Avenue. Rogers Avenue is west of the area in dispute, and Lewiston Avenue is to the east; both of these streets run in a north-south direction. Fronting on the north side of Reisterstown Road (in the 5400 block) and on the east side of Rogers Avenue, there is a shopping center known as the Hilltop Shopping Center. The back of the shopping center is on the south side of Tippett Avenue, across from Parcel No. 2. Parcel No. 3 faces an existing commercial parking lot and various buildings across Tippett Avenue. The subject parcels are abutted by two-story masonry dwellings on Rogers Avenue to the west and on Price Avenue to the north. On the east, a 90 foot lot with an existing dwelling separates

---

1. Actually the streets run in a northeast-southwest or northwest-southeast direction, but for purposes of simplicity, the streets involved will be treated as running east-west or north-south.

the tracts from Lewiston Avenue, on the east side of which there are two-story dwellings.

In 1946 the appellant owned a tract embracing what are now Parcel No. 2, the Hilltop Shopping Center area, and the land to the west and north of Parcel No. 2 (on which two-story masonry dwellings have been erected). At that time, as well as now, the shopping center area was zoned commercial and Parcel No. 2 and the land west and north thereof were zoned residential. The appellant proceeded to develop the residential areas first; the dwellings were built in 1946 and the shopping center in 1947. Houses were constructed west of Parcel No. 2, facing west on Rogers Avenue, and north thereof facing north on Price Avenue. Nothing was built on Parcel No. 2. Parcel No. 3 was not acquired by the appellant until 1960; the appellant has never owned the land opposite Parcel No. 3 across Tippett Avenue, nor the houses on Price Avenue which are north of Parcel No. 3.

The appellant seeks a variation or exception from the residential area restrictions so that Parcels Nos. 2 and 3 may be used for the parking of motor vehicles in conjunction with the Hilltop Shopping Center. The applications for the two lots were heard together by the Board of Municipal and Zoning Appeals (Board) and by the lower court on appeal, and thus both cases are in one record and are treated as one here.

Originally the applications were rejected by the Building Inspection Engineer of Baltimore City (the Zoning Commissioner), and an appeal to the Board ensued. The requests for special exception or variance were made pursuant to Sec. 36 of the Baltimore City Zoning Ordinance which provides in part that the Board may:

> "(b) Grant a permit where the use or change of use of land, buildings or structures proposed to be used is limited as to its location because of the size of buildings, size of yards, irregularity of shape of land or buildings, topography, grade or accessibility * * *
>
> "(c) Grant a permit where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of any of the provisions of this Article * * *"

The Board denied the applications on the basis that, *inter alia,* "any hardship that has been created for the appellant is self-induced and therefore does not warrant the Board in making any exception". The appellant then appealed to the Baltimore City Court, which affirmed the decision of the Board on the basis that, "the record clearly shows that whatever hardship the appellant has incurred has been the result of his own mistakes and wrongdoings," and that "the appellant knew at all times that Parcels 2 and 3 were zoned D-40 Residential, and the law is clear that one cannot purchase land in expectation of being granted a variance or special exception."

At the hearing before the Board several qualified experts appeared for the appellant. One testified that although it would be possible to build homes on the parcels in question, they could not be sold profitably, and that the best use of the land would be for parking. Another testified that it would not be feasible to build homes on the parcels and that it would be difficult to sell such homes if they were built because they would have to face the back of the shopping center, or the back of the houses on Price Avenue. Both experts felt that a parking lot would not impair the value of the adjoining properties. An officer of the appellant corporation, a qualified architect, testified that it would not be feasible to build homes on the two parcels. On cross-examination, he stated that originally tract No. 2 was to be used for residential purposes, but that through the years such use was determined to be impracticable. When asked who had made the mistake in the original decision to use the parcels for residential purposes, he stated that the mistake had been "in our own judgment".

Several protestants also testified at the hearing before the Board. Owners of houses on Price Avenue testified that when they bought their homes, a representative of the appellant corporation had expressly stated that homes would be built on Parcel No. 2, and one said she had received a letter to that effect. Other protestants opposed the granting of permits on the basis that it would depreciate the value of their homes and would create a traffic hazard.

Even though this Court has held that a variance or special exception will not be granted on the basis of practical difficul-

ties or unnecessary hardships if such were the result of the applicant's own action, *Marino v. City of Baltimore*, 215 Md. 206, 137 A. 2d 198 (1957), and that where a person purchases realty with the intention of applying for a variance, he cannot contend that the zoning restrictions cause him such peculiar hardships as to entitle him to the variance, *Gleason v. Keswick Impvt. Ass'n*, 197 Md. 46, 78 A. 2d 164 (1951), there is another, more compelling reason why the applications were properly denied in this case. When an applicant seeks a variance on the basis of "practical difficulties or unnecessary hardships" (Sec. 36 (c), *supra*), he has the burden of showing a substantial and urgent need which would justify the excepton. As was stated in *Cleland v. City of Baltimore*, 198 Md. 440, 444, 84 A. 2d 49 (1951):

> "* * * This court has consistently held that special exceptions will never be granted to gratify mere convenience, that there must be a necessity, and that necessity must be so urgent, and the facts so extraordinary as to require the withdrawal of that particular case from the application of the accepted rule. That accepted rule is the division made in the zoning ordinance for various classes of use districts. It is part of a general plan which is not intended to be changed except in cases of urgent necessity. * * *"

In the present case the testimony produced by the appellant did not rule out the possibility of residential use of the parcels by utilizing a different plot plan, or of other uses permitted in residential districts. The evidence only showed that it would not be "feasible" to build houses according to the plan originally intended by the appellants because they would be difficult to sell. We believe that this testimony was insufficient to establish an urgent necessity, rather than mere convenience, and thus could not support the granting of a variance. Our most recent consideration of this problem was in *M. & C.C. v. Polakoff*, 233 Md. 1, 194 A. 2d 819 (1963), in which we adhered to the rule stated in *Cleland, supra*. Cf. *Carney v. City of Baltimore*, 201 Md. 130, 93 A. 2d 74 (1952); *Heath v. Mayor and City Council of Baltimore*, 190 Md. 478, 58 A. 2d 896 (1948).

378

The appellant here is in the same situation as were the appellants in *Marino,* where it was said (at p. 221 of 215 Md.) : "* * * there are insufficient facts to show indisputably that the residential use ordinance so restricts the use of their property that it cannot be used for any reasonable purpose. * * *" Cf. *City of Baltimore v. Cohn,* 204 Md. 523, 105 A. 2d 482 (1954). The facts before us fall substantially short of establishing a taking in a constitutional sense. Cf. *Frankel v. City of Baltimore,* 223 Md. 97, 101, 162 A. 2d 447 (1960).

Although the appellant also asked for a variance under Sec. 36(b), *supra,* our examination of the record reveals no evidence of any limitation on the use of the land by "size of buildings, size of yards, irregularity of shape of land or buildings, topography, grade or accessibility" as would justify an exception. The premises in question do not appear to come within the purview of this section. Cf. *Marino* (at p. 217 of 215 Md.).

*Judgment affirmed; appellant to pay the costs.*