## BURNS *v.* MAYOR AND CITY COUNCIL OF BALTIMORE

[No. 405, September Term, 1967.]

*Decided December 4, 1968.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN and SMITH, JJ.

*J. Francis Ford,* with whom was *J. Joseph Curran, Jr.,* on the brief, for appellant.

*Paul L. Betz,* with whom were *Charles Mindel* and *Buckmaster, White, Mindel & Clarke* on the brief, for Leroy Kappelman, et al., part of appellees; *Simon Schonfield, Assistant City Solicitor,* with whom was *George L. Russell, Jr., City Solicitor,* on the brief, for Mayor and City Council of Baltimore, other appellee.

FINAN, J., delivered the opinion of the Court.

This is an appeal from a ruling of the Baltimore City Court which affirmed the resolution of the Board of Municipal and Zoning Appeals (Board) approving the application of Leroy F.

Kappelman, Ralph Lubrow and Marian Kappelman, a partnership (appellee), to add two single bedroom units in space already existing, in each of two apartment buildings owned by the appellee designated as Nos. 6103-05 and 6107-09 Bellona Avenue. Appellant is the owner of residential property in which he resides in Baltimore and his home is in close proximity to 6103-05 and 6107-09 Bellona Avenue.

The property designated as 6103-05 is located in an E-40 height and area district and the lot contains 25,918.64 square feet. Under sections 28 and 29 of the Zoning Ordinance (Baltimore City Code (1950 ed., as amended) Art. 40) this lot is sufficient to accommodate ten families. The property designated as 6107-09 contains a total of 31,830.49 square feet, of which 23,609.72 square feet is located in an E-40 height and area district which is sufficient to accommodate nine families and 8,220.77 square feet is located in an F-40 height and area district which is sufficient to accommodate one family. In 1965 each of the lots now designated as Nos. 6103-05 and 6107-09, were improved by a two-story, brick apartment building, 30 feet by 156 feet, housing ten families; the terrace level, two families and the first and second floors; four families each, all in double bedroom units. There was space provided for two additional single bedroom apartments in each of the buildings but they were not completed because under the restrictions of the Zoning Ordinance only ten family occupancy was permitted; consequently, the extra space was used for storage. Construction was completed on these buildings in January, 1965, and the first tenants took possession in April of that same year. In May, 1965, after the apartment units had been in operation for only one month, the appellee made a request for four additional single units, which request was denied because the Board felt that the apartments had not been operated for a sufficient length of time to show hardship. Two years later, in 1967, the appellee filed two applications, one for each property, requesting two additional single bedroom units in each building. The effect of its requests would be to increase the density so that twelve families would be allowed in each of the apartment houses instead of ten, as set out in sections 28 and 29 of the Zoning Ordinance. Again the appellee based its requests primarily on the basis of

hardship. Both of appellee's requests were originally turned down by the Zoning Commissioner and appeals were taken to the Board. The Board, after combining the appeals and hold-in a hearing on them, found that the appellee had shown sufficient hardship under section 40 (c) of the Zoning Ordinance (hardship provision) to justify the granting of a special exception and approved the applications.

The resolution of the Board was appealed to the Circuit Court for Baltimore City and there is was affirmed. It is from that ruling that this appeal is taken.

The main thrust of the appellee's hardship argument is that it has sustained a financial loss. In 1966 the loss was $21,363.66, including $21,200.00 depreciation and the projected loss for 1967 was $4,200.00, without taking into consideration depreciation.

This hardship argument was underpinned with evidence that in the general area of the apartments the demand for single bedroom units was seven (7) times that for double bedroom apartments; that if the apartments did not generate additional revenue, service for the tenants and the quality of maintenance would deteriorate with an accompanying detrimental effect on the appearance of the buildings; that appellee intended to provide the additional parking space which the increased occupancy would require; that since the construction of the apartments, Bellona Avenue had been widened by eight feet, thus minimizing any potential traffic congestion; and that the increase in density would not adversely affect the health, safety or welfare of the neighborhood.

Against these contentions the appellant points out that at the time the partnership purchased the property and erected the buildings, it knew full well that only ten (10) families could lawfully be housed on each of the areas in question.

The appellant also argues that the fact that at the time the buildings were constructed, provision was made for additional space, readily convertible into four (4) extra apartments, raises the suspicion that this may have been by deliberate design in the hope that at some future time the zoning authorities could be persuaded to relax the regulations and allow the construc-

tion of the additional units, such as was approved by the Board and affirmed by the lower court.

The lower court in its oral opinion emphasized that the exception granted by the Board was of a "minimal nature." However, this in itself would not justify arbitrary and capricious action on the part of the Board in granting the exception to the Code, as contended by the appellant.

We think the Board did act arbitrarily in granting the exception and that the lower court erred in not reversing the Board's action as constituting an abuse of its discretion.

In *City of Baltimore v. Polakoff*, 223 Md. 1, 194 A. 2d 919 (1963), a case wherein the owner-developer requested a special exception to allow him to construct a four story, 32 family, luxury apartment house, allegedly in demand, on a lot restricted by zoning to a density of 18 families, Judge Hammond (now Chief Judge) speaking for the Court said: "Mr. Polakoff did not meet the burden he bore as an applicant, showing no more than that the granting of the exception would do no harm and be a profitable convenience to him. Under the cases this is not enough. * * *." *Id.* 9. In *Easter v. Mayor and City Council of Baltimore*, 195 Md. 395, 73 A. 2d 491 (1950), in reversing the lower court and the zoning board, both of which on the basis of hardship had granted a special exception to front yard requirements to permit an owner to extend a store front on a combination store and dwelling, we said: "* * * The mere fact that the variance would make the property more profitable is not a sufficient ground to justify a relaxation of setback requirements. * * *." *Id.* 400.

Assuming, *arguendo*, that straitened financial circumstances could be considered a hardship which would justify a relaxation of the ordinance, the appellee has actually presented a very thin case. In *County Commissioners v. Luria*, 249 Md. 1, 238 A. 2d 108 (1968), in reversing the circuit court which had in turn reversed the action of the Board of County Commissioners for Prince George's County, sitting as the District Council, which had denied a special exception for a gasoline filling station, we stated:

"* * * It is our view that such findings must be based on testimony, and that the applicant assumes the bur-

den of adducing such testimony, even in a prima facie case. * * *." *Id.* at 3.

See also *Board of County Commissioners for Prince George's County v. Lightman,* 251 Md. 86, 246 A. 2d 261.

In the instant case the record reveals that during the year 1966, after allowing $22,100.00 for depreciation, the operation broke about even. The figures for 1967 were projected and presented an estimated $4,200.00 loss after taking depreciation. The testimony on occupancy was vague to the point that it did not close the door on the possibility of obtaining better income from the existing facilities.

Also, as we stated in *Easter, supra*:

"The burden of showing facts to justify an exception of variance rests upon the applicant, and it must be shown that the hardship affects the particular premises and is not common to other property in the neighborhood. * * *." *Id.* at 400.

Certainly, in the instant case, factors which contribute to the financial crisis complained of by the appellee depend on current occupancy demands, general economic conditions and management; all factors which may quickly vary. These are also factors which present problems common to other rental properties in the neighborhood and are not sufficiently peculiar to the appellee's premises as to justify the relaxation of the ordinance on the basis of financial hardship, assuming, for the sake of argument, that hardship may be the subject of valid consideration.

We are of the opinion that the lower court erred in affirming the action of the Board.

*Judgment reversed, appellees to pay costs.*