## DAIHL, ET AL. *v.* COUNTY BOARD OF APPEALS OF BALTIMORE COUNTY AND BAYLUS

[No. 306, September Term, 1969.]

*Decided May 11, 1970.*

158

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*John W. Hessian, III,* for appellants.

*Frank E. Cicone,* with whom was *Christian M. Kahl* on the brief, for appellees.

FINAN, J., delivered the opinion of the Court.

This case is before us on appeal from an order of the Circuit Court for Baltimore County which affirmed an order of the County Board of Appeals for Baltimore County granting a petition seeking the reclassification of two parcels of land. The parcels front on the north side of a paper street known as Riderwood-Lutherville Drive and are part of the Talbott Manor subdivision. The two parcels are separated by two intervening lots which are zoned residential. All of the lots in both parcels are contiguous to industrially zoned land to the north.

This dispute began when Herman Baylus, appellee, petitioned for the reclassification of the two parcels from residential R-6 zoning to industrial M-L zoning. He also asked that the set-off and area restrictions, which are generally applicable to industrially zoned property which abuts on residential, be relaxed. The Deputy Zoning Commissioner [1] allowed the M-L rezoning for the easternmost parcel along with the requested variances. However, he denied the rezoning for the other parcel.

The easternmost and largest parcel consists of Lots 10 through 19 of the Talbott Manor subdivision and is also contiguous to industrially zoned property directly on the east. The smaller and westernmost parcel consisting of Lots 22, 23 and 24 of the subdivision abuts at the front and on the east and west on residential property. The protestants, appellants, live in the immediate area. John Young resides on Lot No. 26 and there is a residence constructed on Lot No. 25. Another protestant, Becky, resides approximately 350 feet from the easternmost parcel. The protestant Daihl at the time of the hearing, was in the process of constructing his home approximately 189 feet from the easternmost parcel and he valued his property at approximately $33,000. There is another residence between the Daihl home and the easternmost parcel. The variances in the Baltimore County Zoning reg-

---

1. Section 500.13 of Baltimore County Zoning Regulations provides that the Deputy Zoning Commissioner shall have authority to exercise the same duties as the Zoning Commissioner.

ulations sought by the petitioner were six in number as
follows:

1. Reduction of the required restrictive strip of
   100 feet to 30 feet (section 255.1).
2. Reduction of the required front yard from 75
   feet to 30 feet (section 243.1).
3. Reduction of the required side yard from 50
   feet to 30 feet (section 243.2).
4. Reduction of the required rear yard from 50
   feet to 30 feet (section 243.3).
5. Reduction of the required set back for a
   structure from 125 feet to 30 feet (section
   243.4).
6. Reduction of the required floor area ratio
   from .4 to 2. (section 243.5 and section 101).

The appellants filed an appeal to the County Board of
Appeals for Baltimore County. Mr. Baylus, petitioner ap-
pellee, filed no cross-appeal. At the hearing, the Board
heard testimony as to the zoning of both parcels of land
although the appellants contend that since no cross-ap-
peal had been filed, the Deputy Commissioner's denial of
industrial zoning for the westernmost parcel was final.
The Board held that both properties should be classified
industrial M-L and as to them granted the requested vari-
ances. On appeal by the appellants, the Circuit Court up-
held the Board's decision.

The issues raised on this appeal are:

1. Did the County Board of Appeals have ju-
   risdiction to consider the appellee's request
   for a review of the Deputy Zoning Commis-
   sioner's denial of the petition for rezoning
   and variances for Lots Nos. 22, 23 and 24,
   the westernmost parcel, in view of the fact
   that the petitioner had taken no appeal from
   the Zoning Commissioner's decision.
2. Did the County Board of Appeals err in re-
   versing the Zoning Commissioner's denial of

the rezoning and variances as to Lots 22, 23 and 24, the westernmost parcel.

3. Did the County Board of Appeals err in affirming the action of the Zoning Commissioner in granting the rezoning and variances for Lots 10 through 19, the easternmost parcel.

### I and II

After a public hearing, the Deputy Zoning Commissioner passed an order granting the rezoning and variances sought by the petitioners for Lots 10 through 19 but denied the rezoning and variances sought for Lots Nos. 22, 23 and 24. On July 26, 1967, the protestants filed a timely appeal; however, it must be noted that the petitioners did not file any appeal. It certainly makes no sense or logic to argue that the protestants in perfecting their appeal intended to take an appeal from any action of the Deputy Commissioner other than that portion of his opinion granting the rezoning and variances to Lots 10 through 19, for the simple reason that the issues involving Lots Nos. 22, 23 and 24 were resolved in their favor. The wording of the following notice of appeal filed by the protestants with the Zoning Commissioner supports this reasoning:

> "Please note an *Appeal from the portions of said Order granting the requested rezoning and variances* to the Board of Appeals of Baltimore County on behalf of Earl S. Jones, et al., residents and protestants." (Emphasis supplied.)

Section 500.10 of the ordinance, which is the general provision regulating appeals, provides in pertinent part:

> "Any person or persons, jointly or severally or any taxpayer, or any official, office, department, board or bureau of Baltimore County, feeling aggrieved by any decision of the Zoning Commissioner shall have the right to appeal therefrom to the County Board of Appeals. * * *"

The above Section should also be considered in conjunction with Section 501.3 which provides in pertinent part:

> "* * * All decisions of the County Board of Appeals shall be made after notice and opportunity for hearing *de novo upon the issues* before said Board. * * *" (Emphasis supplied.)

We think it significant to note that Section 501.3 refers to "issues" and does not use the term decision. Issue connotes a matter which lends itself to a separate finding or separate holding, that is, something which involves a separate point. *Webster's New World Dictionary* (College Edition) defines "issue" as: * * * a point, matter or question to be disputed or decided * * *."

We must also take into consideration the language of Section 501.6 which in referring to appeals, states:

> "Appeals from the Zoning Commissioner shall be heard by the County Board of Appeals de novo. * * *"

We think that the context in which the term *de novo* is used in Section 501.6 and 501.3 (both quoted above) means that on appeal there shall be a *de novo* hearing on those issues which have been appealed and not on every matter covered in the application. In this sense *de novo* means that the Board of Appeals may hear testimony and consider additional evidence pertaining to the issue or issues presented on appeal. See Vol. 2, *The Law of Zoning and Planning,* Rathkoff, ch. 65-30, § 7. The original nature of a *de novo* hearing with its quality of newness is in contra-distinction to a review upon the record as exists where matters are heard on certiorari. 73 C.J.S. *Public Administrative Bodies and Procedure,* § 204.

Both parties to this appeal agree that there appears to be no Maryland case adjudicating the question of whether the *de novo* review power of the Board of Appeals is to be limited to those portions of the Zoning Commissioner's decision from which an appeal has been taken. However, in *Deen v. Baltimore Gas & Electric Company,*

240 Md. 317, 214 A. 2d 146 (1965), this question briefly surfaced but then disappeared. There, a utility company desired to construct a high tension transmission line over a segment of an abandoned railroad right of way 5.1 miles in length. Three areas were involved. At the hearing the Zoning Commissioner granted the utility company's request for its intended use in the third segment, but denied its petition regarding the first and second segment. The utility company appealed to the Board from that portion of the Commissioner's order which required the underground installation of the transmission lines. The Board affirmed the Commissioner's order as to the overhead construction of lines as to the second segment but reversed the Commissioner as to the first segment. Thereafter the utility company took an appeal to the circuit court from the denial of its request for the construction of overhead lines as to the first segment, and the property owners appealed the Board's granting of overhead construction of lines for the second segment. At the hearing in the circuit court, the utility company contended that there was no issue before the Board concerning the authorized construction of overhead facilities in the third segment because the property owners had failed to appeal from the decision. However, the circuit court was of the opinion that the matter before it dealt with the "general subject of 'overhead' vs. 'underground' transmission lines" and considered the appeal to the Board as encompassing the entire distance of the line. The specific issue as to the scope of the appeal before the Board was not raised in this Court on appeal. Although *Deen* does illustrate that appeals may logically be taken from a portion of an order of the Commissioner, it falls short of establishing any precedent as to what may be the scope of a *de novo* hearing.

In the absence of any precedent to guide us, we think the more sensible interpretation of the meaning of the scope of a *de novo* hearing as used in relation to an appeal heard by the County Board of Appeals, from a decision of the Zoning Commissioner, is that it is restricted

to the specific issue or issues resolved by the Commissioner from which an appeal has been taken. By exclusion, this may not encompass all issues which may have been resolved by the Commissioner in his decision, when more than one issue is involved. We think it is consonant with the concept of appeal, that it be coextensive with those issues concerning which the moving party or parties feel aggrieved. We are also buttressed in our reasoning on this matter by the knowledge that such hearings are adversary in nature and are ofttimes complicated. Furthermore, we are of the strong belief that an orderly procedural disposition of these matters requires specificity of the adverse ruling concerning which the aggrieved party seeks review.

Accordingly, we are of the opinion that the County Board of Appeals did not have jurisdiction to review the Deputy Zoning Commissioner's denial of the petition for the reclassification in variances pertaining to Lots Nos. 22, 23 and 24, and that it was error to reverse his decision concerning this westernmost parcel.

## III

The petitioners argued that the evidence presented to the Board brought the application for the rezoning classification under the "change-mistake rule." *Helfrich v. Mongelli,* 248 Md. 498, 237 A. 2d 454 (1968), and numerous cases cited in footnote 2, page 503 of that opinion. See also *Jobar Corp. v. Rodgers Forge,* 236 Md. 106, 202 A. 2d 612 (1964).

The original zoning map covering the area in which the subject parcels are located was adopted by the County Council in November 1955. In an effort to prove a mistake in original zoning the petitioner presented testimony through expert witnesses Augustine J. Muller and Frederick P. Klaus. We think the most favorable interpretation that can be given this testimony is that, on second thought, it would appear that Riderwood-Lutherville Drive, a paper street in 1955, would have made a more logical buffer zone than the boundary adopted. At the

time of the original zoning, the southerly boundary of the 80 acre tract which has now been developed into an industrial park, was adopted as the boundary between the M-L and residential zones. The petitioners' witnesses also discounted the desirability of the use of the property bordering Riderwood-Lutherville Drive for residential purposes.

Hindsight might dictate that Riderwood-Lutherville Drive may have been a better choice for the boundary between M-L zone and the residential zone; however, this desirability falls far short of substantiating its adoption as error. In the case *Greenblatt v. Toney Schloss Properties Corporation*, 235 Md. 9, 200 A. 2d 70 (1964), the expert witness stated that there had been error in the 1957 comprehensive rezoning plan because the legislative body had used the boundary lines of a tract of land rather than a natural drainage course as a dividing line between an R-40 and an R-20 zone. After reaffirming the strong presumption attending original zoning and comprehensive rezoning, citing *Shadynook Imp. Assn. v. Molloy*, 232 Md. 265, 269, 192 A. 2d 502 (1963), we stated: "* * * the use in 1957 of a property line which was then proper and appropriate * * * was not error simply because it is now revealed that subsequent events (the manner of development of contiguous lands) have made it more logical or desirable or economically profitable that the division line be a natural contour line * * *." 235 Md. at 14.

The protestants have also testified that Riderwood-Lutherville Drive has been improved to the extent that the improved portion now extends 100 feet in front of Lots Nos. 22, 23 and 24, and that utilities are now available for residential development within several hundred feet of the subject properties. Viewing the evidence offered in totality and recognizing the strong presumption of correctness which attaches to original zoning, *Shadynook Imp. Assn.*, *supra*, we do not think the evidence as to mistake was sufficiently strong as to render that question "fairly debatable." *Dill v. Jobar Corp.*, 242 Md. 16, 23, 217 A. 2d 564 (1966); *Rohde v. County*

*Bd. of Appeals,* 234 Md. 259, 199 A. 2d 216 (1964) ; and *Overton v. Co. Commissioners,* 225 Md. 212, 219, 170 A. 2d 172 (1961). See also the discussion in *Mack v. Crandell,* 244 Md. 193, 198, 199, 223 A. 2d 243 (1966).

With regard to the question of change in the character of the neighborhood, we reach a different conclusion. The original zoning map having been adopted in 1955, the evidence in the record reveals that in September of 1962, Lots Nos. 1 through 9 of the Talbott Manor, which are contiguous and immediately east of Lots Nos. 10 through 19 were rezoned from R-6 to M-L. This in effect enlarges the industrial park area. There has been considerable building in the industrial park itself and we are of the opinion that the evidence does render the question of change in the character of the neighborhood as fairly debatable and hence we must not disturb the finding of the Board on this issue. *Brenbrook Constr. Co. v. Dahne,* 254 Md. 443, 450, 255 A. 2d 32 (1969) ; *Hunter v. County Commissioners,* 252 Md. 305, 250 A. 2d 81 (1969) ; and cases cited therein at page 309.

However, we differ with the lower court in its affirmance of the action of the Board in granting the requested variances as to Lots Nos. 10 through 19. Section 307 of the Zoning Ordinance expressly provides that, "the Zoning Commissioners of Baltimore County and the Board of Appeals * * * shall have * * * the power to grant variances from height and area regulations, * * * only in cases where strict compliance with the Zoning Regulations in Baltimore County would result in practical difficulty or unreasonable hardships. Furthermore, any such variance shall be granted only if in strict harmony with the spirit and intent of said height, area * * * regulations, and only in such manner as to grant relief without substantial injury to public health, safety, and general welfare. * * *"

The Board predicated its granting of the variances on the basis that they were "reasonable and essential to prevent practical difficulty and hardship in developing the property." However, there is nothing in the record which

would indicate the exact type of structure that the petitioners intended to construct on Lots 10 through 19, other than that it would be in keeping with the general architectural scheme prevalent in the industrial park.

We cannot overlook the fact that in the instant case there are substantial residential properties within the immediate area. The appellant Becky resides 350 feet from Lots 10 through 19. The appellant Daihl is constructing a $33,000 home, 186 feet from Lots 10 through 19. There is another residence between Daihl's home and Lots 10 through 19. Appellant Young resides on Lot No. 26. The evidence is such as would lead a reasonable man to the belief that the granting of these variances may well affect the aesthetic ambience of the residentially zoned properties which lie in the immediate area. For this reason we are of the opinion that the granting of these variances would be in disharmony with the "spirit and intent * * * of * * * the regulations * * *."

The "difficulties" and "hardships" to which the Board referred, although not spelled out, obviously were thought to be of such a nature that, if not overcome, would have resulted in the petitioners sustaining some financial hardship in their efforts to develop the property and in their future use of it. In *Easter v. The Mayor and City Council of Baltimore*, 195 Md. 395, 400, 73 A. 2d 491 (1950) we said: "The mere fact that the variance would make the property more profitable is not a sufficient ground to justify a relaxation of setback requirements. *Garden View Homes v. Board of Adjustment*, 137 N.J.L. 44, 57 A. 2d 677." In that same opinion Judge Henderson, later Chief Judge, also stated: "* * * but we think the detriment to the applicant must be weighed against the benefit to the community in maintaining the general plan." See also *Burns v. Baltimore City*, 251 Md. 554, 558, 248 A. 2d 103 (1968), and *City of Baltimore v. Polakoff*, 233 Md. 1, 194 A. 2d 819 (1963). As we view the law, we think the granting of the variances by the Board was arbitrary and capricious.

On the basis of what we have said in this opinion we

affirm the decision of the lower court in sustaining the Board's action with regard to the rezoning of Lots 10 through 19 from R-6 to M-L (light manufacturing), and reverse the decision with respect to the court's affirming of the granting of the variances as to Lots 10 through 19 and the rezoning and variances as to Lots 22, 23 and 24.

> *Order affirmed in part and reversed in part as set forth in this opinion, appellees to pay costs.*