549 A.2d 762

Sue H. GREEN, et al.

v.

Scott S. BAIR, Sr.

No. 187, Sept. Term, 1988.

Court of Special Appeals of Maryland.

Nov. 4, 1988.

Certiorari Denied March 8, 1989.

William B. Dulany (David K. Bowersox and Dulany, Parker & Scott on the brief), Westiminster, for appellants.

Clark R. Shaffer (C. Rogers Hall, Jr. on the brief), Westminster, for appellee.

Argued before MOYLAN, ROBERT M. BELL, and WENNER, JJ.

ROBERT M. BELL, Judge.

This case reaches us on an appeal and cross-appeal from the judgment of the Circuit Court for Carroll County. The City of Westminster Board of Zoning Appeals, after a public hearing, granted, in part, the application, of Sue H. Green and Beulah C. Chang, appellants/cross-appellees, (hereinafter "appellants"), for variances from the City's set back requirements, thus permitting enlargement of an existing medical office building. Upon the appeal of Scott S. Bair, Sr., appellee/cross-appellant, (hereinafter "appellee"),

the circuit court reversed that decision. The appeal presents two questions, *i.e.,*

1. Was the December 29, 1986 decision of the Westminster Board of Zoning Appeals, granting variances for the petitioners/cross-respondents Green and Chang's property, supported by substantial, probative evidence of record and therefore, fairly debatable, making the circuit court's reversal of the Board's decision an impermissible substitution of the circuit court's judgment?

2. Does the language of the City of Westminster's Zoning Ordinance § 21–3, defining the term "variance" create an operative standard which the City of Westminster's Board of Zoning Appeals must apply in ruling on applications for variances, in addition to certain enumerated findings which the Board is directed to make pursuant to § 21–71 of that ordinance?

The cross-appeal presents only one:

Was the advertised notice of hearing adequate under Maryland law?

Inasmuch as we find no merit in appellants' argument, we will affirm the judgment of the circuit court. It is therefore unnecessary that we address the cross-appeal.

Appellants are the owners of land, zoned B–Business, located in Westminster, on which is constructed a medical office building, out of which their husbands conduct their pediatric practice. The medical office building was constructed in 1969 and the doctors have practiced in that building since that date. Although at the time that the building was constructed the City set back requirements were much more liberal, the current set back requirements prohibit the construction of a building closer than 30 feet from the right-of-way adjacent to the building's front or from the residential property bordering on the building's side. *See* Westminster City Zoning Code § 21–16(e).

After their husbands had practiced in the building as originally constructed for some 17 years, appellants filed an application for variances to reduce the set back require-

ments on those sides of the building adjacent to Washington Road and bordering on appellees' residential property.[1] At the hearing before the Board, testimony in support of the application was presented by one of the appellants, Mrs. Green, and her husband. Each of them testified as to the need for the variances and the hardship which would result if they were not granted. Both testified to the need to have the records generated by the practice close at hand and that there was no feasible alternatives to the expansion of the building that the grant of the variances would allow. Both also testified to the difficulty of continuing the existing practice without the variances. Mrs. Green additionally noted the need to accomodate the support staff. She observed, during her testimony that "it's serving well, but ... it can be a stressful situation in not having the room to function, and not having access to records. If you have to store your record[s] and your files elsewhere, it's greatly difficult to function." Dr. Green, on the other hand, focused on the morale problem that lack of space was causing. In addition to the diminution of property values, he also testified that changes in the medical practice and the existence of a malpractice crisis generated the need to keep more records, as well as required, that they be kept for longer periods of time. Dr. Green acknowledged that he could continue his present practice "with great difficulty" if the variances were not granted and that approval of the variances would increase the value of the property as well as make it more convenient for him to practice medicine.

The Board found this testimony persuasive and incorporated it into its decision. The Board was also "impressed that Dr. Green has expressly represented that there is no

---

1. The application actually sought variances from the sideline and rear line set back requirements; however, based upon the evidence presented at the hearing and interpreting the City's zoning ordinance, the Board determined that what was actually sought were variances from the front yard set back requirements and a side yard set back variance.

intention nor expectation that the patient load of he [sic] and Dr. Chang will be changed." It concluded:

The Doctors have considered and explored alternatives to seeking the requested variances, including the rental of space off-site for record keeping, but have been unsuccessful in those efforts. Essentially, in this case, the Board is of the collective opinion that unless a variance can be granted, the continued operations and patient services of Drs. Green and Chang will be substantially compromised if not jeopardized. The medical practice is a permitted use in the B–Business zone, and the ability of doctors to store and retrieve their patient records on-site is customarily incidental to this use. The inability of Drs. Green and Chang to store and retrieve their patient records on-site deprives them of conducting their medical practice as it normally is undertaken by other medical practitioners. Indeed, the availability of those records on-site will enhance the ability of Drs. Greene and Chang to provide patient care.

In sum, the Board is convinced and persuaded by the evidence of record, including but not limited to, the testimony of Dr. Green, that limited variances would not be contrary to the public interest and that there are conditions peculiar to the subject property which are not the result of the actions of the Applicants, and that a literal enforcement of the provisions of the Westminster Zoning and Subdivision Ordinance would result in an unnecessary and undue hardship. Indeed, the Board is of the opinion that for the foregoing reasons, the Applicants have satisfied their burden of proof and the requirements of the ordinance to justify in this case, limited variances.

Implicit in the Board's decision is the recognition that, to justify the variances, it had to find that failure to do so would result in "an unnecessary and undue hardship."

The court agreed with the Board that a showing of undue hardship was a necessary prerequisite to the grant of the variances. Nevertheless and notwithstanding its recognition that it must uphold the Board's decision "if it is not

premised upon an error of law and if the agency's conclusions reasonably may be based upon the facts proven." *Ad + Soil, Inc. v. County Comm'rs,* 307 Md. 307, 338, 513 A.2d 893 (1986). *See also Heaps v. Cobb,* 185 Md. 372, 379, 45 A.2d 73 (1945); *Ginn v. Farley,* 43 Md.App. 229, 235, 403 A.2d 858 (1979); *Annapolis v. Annap. Waterfront Co.,* 284 Md. 383, 395, 396 A.2d 1080 (1979), it found that the Board's finding of "undue hardship" was "unreasonable". Relying upon the definition of "undue hardship" set out in *Anderson v. Board of Appeals,* 22 Md.App. 28, 38-9, 322 A.2d 220 (1974), and finding that the evidence failed to meet that test, it concluded:

"If viewed in a most favorable light, Applicants' testimony revealed only that the variances would do no harm, and would allow them to conduct their business much more easily."

The Westminster City Code defines "variance" as

A relaxation of the terms of this chapters where such "variance" will not be contrary to the public interest and where, owing to conditions peculiar to the property and not the results of the actions of the applicant, a literal enforcement of this chapter would result in unnecessary and undue hardship.

Moreover,

(1) such variances shall be authorized by the Board only upon finding by the Board that:

a. There are exceptional or extraordinary circumstances or conditions applying to the property in question or to the intended use of the property that do not apply generally to other properties or classes of uses of the same zone;

b. Such variance is necessary for the preservation and enjoyment of substantial property rights possessed by other properties in the same zone and in the same vicinity; and

c. The authorizing of such variance will not be of substantial detriment to adjacent properties and will

not materially impair the purpose of this chapter or the public interest.

Section 21–71(c)(1). Only "area",[2] as opposed to "use", variances are permitted by the Code. *See* § 21–71(c)(2).

Viewing the statutory scheme as a whole makes patent that whether an undue hardship would result if the variances were not granted is an essential element to be considered by the Board when determining whether to grant or deny a variance. The definition of variance in § 21–3 applies whenever the term variance is used throughout the ordinance. Thus § 21–71(c)(1) cannot be read without reference to that definition. To do otherwise would be to fail to adhere to a venerable precept of statutory construction: "if there is no clear indication to the contrary, a statute must be read so that no part of it is rendered surplusage, superfluous, meaningless or nugatory". *Ford Motor Land Development v. Comptroller,* 68 Md.App. 342, 346, 511 A.2d 578 (1986). *See also Scott v. State,* 297 Md. 235, 246, 465 A.2d 1126 (1983); *Board of Education, Garrett County v. Lendo,* 295 Md. 55, 63, 453 A.2d 1185 (1982); *Baltimore Building & Construction Trades Council v. Barnes,* 290 Md. 9,

---

2. Ordinarily, applicants seeking an area variance need only meet a standard of "practical difficulty". That standard was explained in *Anderson,* 22 Md.App. at 39, 322 A.2d 220:

> In order to justify a grant of an area variance the applicant need show only that:
> "1) Whether compliance with the strict letter of the restrictions governing area, setbacks, frontage, height, bulk or density would unreasonably prevent the owner from using the property for a permitted purpose or would render conformity with such restrictions unnecessarily burdensome.
> "2) Whether a grant of the variance applied for would do substantial justice to the applicant as well as to other property owners in the district, or whether a lesser relaxation than that applied for would give substantial relief to the owner of the property involved and be more consistent with justice to other property owners.
> "3) Whether relief can be granted in such fashion that the spirit of the ordinance will be observed and public safety and welfare secured. *McLean v. Soley,* 270 Md. 208, 214–15, 310 A.2d 783, 787 (1973), quoting 2 Rathkopf, The Law of Zoning Planning, 45–28–29 (3d ed. 1972).

15, 427 A.2d 979 (1981). But this is precisely what appellants would have us do. Their argument is that since the requirement of "undue hardship" appears only in the definitional section, and not in the substantive provisions of the Code, the only evidence they were required to produce was that which would permit the Board to make the findings set out in § 21–71(c)(1). In short, they urge us to read out of the statute the words "undue hardship". That we decline to do.

There is, moreover, no logical impediment to our giving effect to both the definitional provision and the substantive one. We considered the showing required to meet the "undue hardship" standard in *Anderson* and concluded:

Where the standard of undue hardship applies, the applicant, in order to justify the grant of the variance, must meet three criteria:

1) If he complied with the ordinance he would be unable to secure a reasonable return from or to make reasonable use of his property. *Pem Co. v. Baltimore City,* 233 Md. 372, 378, 196 A.2d 879, 882 (1964); *Marino v. City of Baltimore,* 215 Md. 206, 218, 137 A.2d 198, 202 (1957); *See Salisbury Bd. v. Bounds,* 240 Md. 547, 555, 214 A.2d 810, 815 (1965). Mere financial hardship or an opportunity to get an increased return from the property is not a sufficient reason for granting a variance. *Daihl v. County Board of Appeals,* 258 Md. 157, 167, 265 A.2d 227, 232 (1970); *Salisbury Bd. v. Bounds, supra,* 240 Md. at 555, 214 A.2d at 814; *Marino v. City of Baltimore, supra; Easter v. City of Baltimore,* 195 Md. 395, 400, 73 A.2d 491, 492 (1950).

2) The difficulties or hardships were peculiar to the property in question and contrast with those of other property owners in the same district. *Burns v. Baltimore City,* 251 Md. 554, 559, 248 A.2d 103, 106 (1968); *Marino v. City of Baltimore, supra; Easter v. City of Baltimore, supra.*

3) The hardship was not the result of the applicant's own actions. *Salisbury Bd. v. Bounds, supra; Marino v. City of Baltimore, supra; Gleason v. Keswick Impvt. Ass'n,* 197 Md. 46, 50–51, 78 A.2d 164, 165–66 (1951).

22 Md.App. at 38–9, 322 A.2d 220.. Comparing this standard with the required showings under § 21–71(c)(1) reveals that there is an overlap between the two; but to the extent that the required showings differ from the undue hardship requirement, they are not inconsistent. In other words, the required findings can be made in addition to those required under the undue hardship standard. Thus, the Code creates a variance standard for the City of Westminster that is not wholly that applicable to use variances nor wholly that applicable to area variances, but one that contains elements of both. That it does so does not render the Code in anywise deficient or unenforceable. As the trial court recognized, "It is not for the court to decide the wisdom, *vel non,* of the zoning code, as adopted by the Mayor and common council, but rather to enforce it as it is written."

We agree with the trial court that appellants' evidence failed to demonstrate that they met the first two criteria required for showing undue hardship. It follows, therefore, that we also agree with the trial court that the evidence before the Board did not render that issue fairly debatable. Consequently, the trial court's judgment must be affirmed.[3]

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.

---

**3.** The trial court also found that even under the less onerous standard set out in § 21–71(c)(1), appellants would not prevail because "there is no evidence that the difficulties they are encountering are peculiar to the property in question, or contrast with those of any other successful business in the B–Business zone." We agree with that finding as well. Indeed, were appellants showing sufficient to grant a variance under § 21–71(c)(1)'s required findings, we, like appellees, find "it . . . difficult to imagine a modern business that could not create the same record and obtain the same variance."