672 A.2d 173

**Leo J. UMERLEY, et ux.**

v.

**PEOPLE'S COUNSEL FOR BALTIMORE COUNTY, et al.**

**No. 802, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

March 1, 1996.

498

Robert L. Hanley, Jr. (Stephen J. Nolan and Nolan, Plumhoff & Williams, Chtd. on the brief), Towson, for appellants.

Peter Max Zimmerman (Carole S. Demilio, on the brief), Towson, for appellees.

Argued before MOYLAN, BISHOP and EYLER, JJ.

BISHOP, Judge.

Appellants, Leo and Wanda Umerley, filed a petition requesting that the zoning commissioner of Baltimore County grant a special exception for a Class II Trucking Facility and certain variances. The Commissioner denied the petition for a special exception and dismissed the variances.

The Umerleys filed a timely appeal to the Board of Appeals of Baltimore County. After a *de novo* hearing, the Board of Appeals granted the requested special exception and variances.

Appellees, the People's Counsel for Baltimore County, the Nottingham Improvement Association, residents of the Nottingham neighborhood, and Gary Hoffman, owner of a business property adjacent to that of the Umerleys, filed an appeal of the Board of Appeals's decision to the Circuit Court for Baltimore County. Following oral argument, the circuit court reversed the Board of Appeals's decision, and the Umerleys noted an appeal to this Court.

## ISSUE

The Umerleys raise a single issue on appeal, which we subdivide and rephrase:

I.  Did the Board of Appeals properly grant the variances?

II.  Did the Board of Appeals properly grant the special exception?

### FACTS

The subject of this appeal consists of 8.5 acres that were acquired by the Umerleys over a period of thirty-one years. The property lies northeast of Baltimore City, and is bordered by Philadelphia Road to the north, by a line of the Baltimore & Ohio Railroad to the south, and by unimproved, wooded property to the east and west. The property is primarily zoned Manufacturing Light, Industrial Major ("M.L.–I.M."), and lies directly across Philadelphia Road from the residential neighborhood of Nottingham. Philadelphia Road itself is a two-lane artery that lies between U.S. Interstate 95 and U.S. Route 40 (Pulaski Highway); the land to its north is generally zoned for residential use, while the land to its south is zoned for industrial use.

The Umerleys acquired the first part of the 8.5 acre parcel in the mid–1950s. That lot, which consists of 2.5 acres, was improved by a two-bay garage in 1958. In 1961, the garage was expanded to four bays, and in 1982, an office complex was constructed next to the garage. The lot is mostly paved and is used for "employee automobile parking, truck parking, and frontage landscaping."

In 1982, the Umerleys acquired the second part of the 8.5 acre parcel. That lot, which consists of 2.8 acres, is almost entirely paved and is used for truck and trailer parking.

In 1989, the Umerleys acquired the third part of the 8.5 acre parcel. That lot consists of 3.2 acres and is vacant and wooded.

In 1976, the Baltimore County Council passed regulations designed to minimize the impact of trucking facilities on environmentally sensitive and residential areas. Recognizing the adverse effect of the regulations on existing trucking facilities, the council included provisions that allowed such

trucking facilities to exempt themselves from the new laws. We paraphrase these exemptions as follows:

1) All existing Class II trucking facilities had to file plans demonstrating their "layout and operation of use" with the county within one year of the passage of the law. (BCZR 410A.1.A.1, 410A.1.A.2, 410A.3.C.1).

2) Within one year of the date those plans were filed, the Zoning Commissioner was required to determine if they complied with selected provisions of the new regulations, or whether they were permissibly exempt from those regulations. (BCZR 410A.1.B.1, 410A.1.B.2, 410A.1.B.3).

3) If the Zoning Commissioner determined that the filed plans did not comply with the appropriate regulations, and were not permissibly exempt from those regulations, the trucking facility was required to file:

a) a program of compliance showing that the appropriate regulations would be met within twenty-seven months (BCZR 410A.1.C.1); or

b) a petition requesting that the facility not be required to meet the appropriate regulations because "conformance with the provision would cause undue hardship and would not be in the general interest of the community...." (BCZR 410A.1.C.2).

4) Failure of a trucking facility to file plans with the county at all (in conformance with BCZR 410A.1.B.1 or 410A.1.B.2) meant that the facility lost the right to exist as a trucking facility three years from the date the new law was passed. (BCZR 410A.1.D.1 and 410A.1.D.2). Failure of a nonconforming trucking facility to file either a program of compliance or a petition for noncompliance (in conformance with BCZR 410A.1.C.1 or 410A.1.C.2) meant that the facility lost its right to exist as a trucking facility three years after the determination of noncompliance by the Zoning Commissioner. (BCZR 410A.1.D.3). If a trucking facility failed to comply with the applicable exemption provisions and thus lost the right to exist as a trucking facility, it could only continue operations by qualifying as a new use.

The Umerleys operated a trucking facility on the original 2.5 acre parcel at the time the 1976 regulations were passed; and their facility violated those regulations. The Umerleys never complied with the exemption provisions of the new law, and lost the right to maintain a trucking facility on the property. In spite of this fact, the Umerleys never shut down their facility; they actually expanded it in 1982 and 1988. For the 1982 expansion, the Umerleys obtained a permit from the county's Department of Permits and Licenses. On the application for that permit, the Umerleys represented that the land was to be used for the operation of a contracting business, rather than a trucking facility.

In the late 1980s, as a result of complaints from nearby businesses and residents, the county authorities finally noted the Umerleys' zoning violations. In response, the Umerleys moved to legalize the use of their land by filing a petition for the following:

1) A special exception to allow a Class II trucking facility in the M.L.–I.M. zone. (BCZR 253.2.A.6, 410, 410A).

2) A variance to allow a trucking facility within 300 feet of residential zones or residences. (BCZR 410A.2).

3) A variance to allow a trucking facility within 200 feet of wetlands. (BCZR 410A.2).

4) A variance to allow a trucking facility within 200 feet of Philadelphia Road. (BCZR 253.4).

5) A variance to allow automobile parking within 25 feet of a residential zone. (BCZR 410A.2).

6) A variance to allow the percentage of the facility devoted to truck and trailer parking to be 35.5 percent of the site used for trucking operations as opposed to the required 75 percent. (BCZR 410A.3.B.3).

7) A variance requesting a reduction of the sideyard building setback from fifty feet to seven feet within the increased setback area. (BCZR 243.2).

As stated *supra*, the zoning commissioner denied the Umerleys' petition, but the Board of Appeals of Baltimore County reversed that decision after a *de novo* hearing, and the Circuit

Court for Baltimore County reversed the Board of Appeals's decision.

## DISCUSSION

### Standard of Review

■ The order of a county zoning authority "must be upheld on review if it is not premised upon an error of law and if [its] conclusions 'reasonably may be based upon the facts proven.'" *Ad + Soil, Inc. v. County Commissioners of Queen Anne's County*, 307 Md. 307, 338, 513 A.2d 893 (1986) (citing *Annapolis v. Annapolis Waterfront Co.*, 284 Md. 383, 399, 396 A.2d 1080 (1979)). *See also Montgomery County v. Merlands Club, Inc.*, 202 Md. 279, 287, 96 A.2d 261 (1953) (zoning authority must properly construe controlling law); *Northampton Corp. v. Prince George's County*, 273 Md. 93, 101, 327 A.2d 774 (1974) (action of zoning authority is "fairly debatable" if based on substantial evidence); *Board of County Commissioners v. Holbrook*, 314 Md. 210, 218, 550 A.2d 664 (1988) (fairly debatable test "accords with the general standard for judicial review of the ruling of an administrative agency, which [is] defined as 'whether a reasoning mind reasonably could have reached the factual conclusion the agency reached; this need not and must not be either judicial fact-finding or a substitution of judicial judgment for agency judgment.'"); *Ocean Hideaway Condominium Ass'n. v. Boardwalk Plaza Venture*, 68 Md.App. 650, 665, 515 A.2d 485 (1986) (no substantial evidence to support factual findings of zoning authority; because of the lack of substantial evidence, zoning authority's decision was not fairly debatable, and thus was "arbitrary, capricious and a denial of due process of law.").

■ An application of the above standard requires that we undertake the three-step analysis set forth by this Court in *Comptroller v. World Book Childcraft*, 67 Md.App. 424, 508 A.2d 148 (1986):

1. First, the reviewing court must determine whether the agency recognized and applied the correct principles of law

governing the case. The reviewing court is not constrained to affirm the agency where its order "is premised solely upon an erroneous conclusion of law."

2. Once it is determined that the agency did not err in its determination or interpretation of the applicable law, the reviewing court next examines the agency's factual findings to determine if they are supported by substantial evidence, *i.e.*, by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . . .

3. Finally, the reviewing court must examine how the agency applied the law to the facts. This, of course, is a judgmental process involving a mixed question of law and fact, and great deference must be accorded to the agency. The test of appellate review of this function is "whether . . . a reasoning mind could reasonably have reached the conclusion reached by the [agency], consistent with a proper application of the [controlling legal principles]."

*Id.* at 438–39, 508 A.2d 148 (citations omitted).

Also, unlike our review of a trial court's judgment, we will only uphold the decision of an agency on the basis of the agency's reasons and findings. *United Steelworkers of America AFL–CIO v. Bethlehem Steel Corp.*, 298 Md. 665, 679, 472 A.2d 62 (1984). We may search the record for evidence to support a trial court's judgment; and we may sustain that judgment for a reason plainly appearing on the record, even if the reason was not relied on by the trial court. *Id.* But we may not uphold an agency's decision "unless it is sustainable on the agency's findings and for the reasons stated by the agency." *Id.*

## I. Variances

The zoning commissioner of Baltimore County and the Board of Appeals of Baltimore County are given the power to grant variances by BCZR 307.1, which provides as follows:

The zoning commissioner of Baltimore County and County Board of Appeals, upon appeal, shall have and they are hereby given the power to grant variances from height and

area regulations, from off-street parking regulations and from sign regulations, only in cases where special circumstances or conditions exist that are peculiar to the land or structure which is the subject of the variance request and where strict compliance with the zoning regulations for Baltimore County would result in practical difficulty or unreasonable hardship. No increase in residential density beyond that otherwise allowable by the zoning regulations shall be permitted as a result of any such grant of a variance from height or area regulations. Furthermore, any such variance shall be granted only if in strict harmony with the spirit and intent of said height, area, off-street parking, or sign regulations, and only in such manner as to grant relief without injury to public health, safety, and general welfare. They shall have no power to grant any other variances. Before granting any variance, the zoning commissioner shall require public notice to be given and shall hold a public hearing upon any application for a variance in the same manner as in the case of a petition for reclassification. Any order by the zoning commissioner or the County Board of Appeals granting a variance shall contain a finding of fact setting forth and specifying the reason or reasons for making such variance.

In the appeal before the circuit court, the parties clashed over the following question: whether the regulations from which the Umerleys seek variances are "height and area" regulations or "use" regulations. Under BCZR 307.1, a variance may only be granted from "height and area" regulations. "Height and area" regulations establish "area, height, density, setback, or sideline restrictions," while "use" regulations restrict the use to which a piece of property may be put. *Anderson v. Board of Appeals,* 22 Md.App. 28, 37–38, 322 A.2d 220 (1974). The circuit court ruled that there was substantial evidence to support a finding by the Board of Appeals that the regulations from which the Umerleys seek variances are "height and area" regulations. An examination of the requested variances reveals that there is substantial evidence to support the Board of Appeals's conclusion that the subject

regulations are "height and area" regulations. Thus, we turn to the question of whether the Board of Appeals properly granted the requested variances.

■ A variance may only be granted after a two-step inquiry. First, the zoning authority must determine whether the subject property is unique and unusual in a manner different from the nature of the surrounding properties such that the uniqueness or peculiarity of the property causes the zoning provision to have a disproportionate impact on the property. *Cromwell v. Ward,* 102 Md.App. 691, 721, 651 A.2d 424 (1995). If such a finding is made, the zoning authority must then determine whether an unreasonable hardship results from the disproportionate impact of the ordinance. *Id.* These general rules are recognized by BCZR 307,1, which provides that a variance may only be granted if there are "special circumstances or conditions ... peculiar to the land ... and [if] strict compliance with the zoning regulations for Baltimore County would result in practical difficulty or unreasonable hardship."

The "uniqueness" requirement has a rather specialized meaning. As this Court established in *North v. St. Mary's County,* 99 Md.App. 502, 638 A.2d 1175 (1994),

> the "unique" aspect of a variance requirement does not refer to the extent of improvements upon the property, or upon neighboring property. "Uniqueness" of a property for zoning purposes requires that the subject property have an inherent characteristic not shared by other properties in the area, *i.e.* its shape, topography, subsurface condition, environmental factors, historical significance, access or non-access to navigable waters, practical restrictions imposed by abutting properties (such as obstructions) or other similar restrictions. In respect to structures, it would relate to such characteristics as unusual architectural aspects and bearing or party walls.

*Id.* at 514, 638 A.2d 1175.

A reading of the Board of Appeals's opinion shows that it failed to apply properly the law governing variances. On

pages sixteen and seventeen, the Board sets forth, verbatim, the requirements of BCZR 307.1—the regulation governing the granting of variances in Baltimore County. But then the Board goes on to ignore the first prong of the variance test—whether the subject property is unique and unusual in a manner different from the nature of the surrounding properties such that the uniqueness or peculiarity of the property causes the zoning provision to have a disproportionate effect on the property. For each of the requested variances, the Board only addresses whether the Umerleys' compliance with the applicable regulation would cause them practical difficulty or undue hardship—the second prong of the variance test.

Ordinarily, the Board of Appeals's failure to consider the first prong of the regulation would mandate that we vacate and remand for further proceedings. We shall assume, however, that the Board of Appeals did find, implicitly, that there was sufficient evidence to support uniqueness, and, for that reason, moved on to consider the second prong of the variance test. Our review of the evidence that was produced before the Board and the considerable amount of argument presented by the parties in this appeal on the issue of uniqueness convinces us, as a matter of law, that there is no substantial evidence to support a finding of uniqueness; and, therefore, it cannot be said that such a finding would be "fairly debatable." As this Court said in *Ocean Hideaway Condominium Ass'n. v. Boardwalk Plaza Venture,* 68 Md.App. 650, 515 A.2d 485 (1986), "[W]hen a Board's finding cannot be said to be 'fairly debatable,' it is arbitrary, capricious and a denial of due process of law." *Id.* at 665, 515 A.2d 485. As in *Ocean Hideaway,* in which the record clearly indicated that the special exception should not have been granted, we hold that the requirements of Maryland law on variances were not met, and the circuit court was correct in reversing the Board's decision.

■ As the Umerleys correctly assert, our inquiry on this issue focuses on whether there is substantial evidence in the record to support a finding that the subject property is

"unique." *See Cromwell,* 102 Md.App. at 726, 651 A.2d 424 (zoning authority held to have erred in granting variance when no evidence submitted to indicate that subject property was "unique"). In their briefs, the Umerleys fail to point to any evidence that would support a finding that their property is "unique" within the meaning of Maryland case law and BCZR 307.1. The Umerleys only point to evidence that shows that their operations predate the 1976 trucking facility regulations, that their facility has always been in violation of those regulations, that their operations cannot comply with those regulations, and that their operation is important to the economy of both Baltimore County and the State of Maryland. Because the uniqueness requirement mandates that the subject property "have an *inherent* characteristic not shared by other properties in the area," such evidence cannot support a finding that the Umerleys' property is unique within the meaning of Maryland law. A review of the record fails to reveal any other evidence that would support such a finding.

The Umerleys make much of the fact that their operation contributes substantially to the area economy, and that they will be forced to close their business if the requested variances and special exception are not granted. They also make much of the fact that the Baltimore County Council explicitly stated that part of the purpose of the 1976 trucking facility regulations is to "accommodate trucking activities, in recognition of their importance to the economy of the County and the nation." BCZR 410A.4.B.7. The Umerleys argue that this provision shows that the Baltimore County Council did not intend to force trucking operations out of business with the 1976 regulations, and that we should effectuate that intent by upholding the Board of Appeals's ruling.

We agree that the Baltimore County Council did not intend to drive legitimate trucking operations out of business with the 1976 trucking regulations. That is why it included the exemption provisions in those regulations. The Umerleys failed to take advantage of the window of opportunity opened by those exemption provisions; as a result, their operation has been in violation of the law for the past seventeen years. The

only way for them to comply with the law is to petition for variances and a special exception. Because the Umerleys failed to produce substantial evidence showing that their property is "unique" within the meaning of applicable Maryland law, their variance requests must be denied.

As a final matter, we note that the Umerleys might have been able to undertake their 1980s expansion activities legally had they properly complied with the exemption provisions of the 1976 regulations. Under BCZR 410A.1.E.1, a nonconforming trucking facility that existed at the time the 1976 regulations were passed and that properly complied with the applicable exemption provisions is allowed to expand its activities "to the minimum extent necessary to comply with the standards of Subsection 410A.3" as long as the zoning commissioner determines that "the expansion would be in the interest of the general welfare of the community. . . ." Regulation 410A.3 provides, in relevant part, that all trucking facilities must be located on lots that are at least five acres (BCZR 410A.3.B.1), and that all trucking facilities must contain "adequate rest-room facilities, a drivers' room, and telephone service for the truck drivers and other personnel. . . ." BCZR 410A.3.B.8. In the 1980s, the Umerleys: 1) expanded their lot on which they conducted their trucking operations from 2.5 acres to 5.3 acres; and 2) constructed a two-story office building on the original 2.5 acre site. Given the provisions of BCZR §§ 410A.1.E.1, 410A.3.B.1, and 410A.1.B, such activities might have been proper had the Umerleys properly complied with the exemption provisions of the 1976 regulations.

## II. Special Exception

When a use district is established, applicable regulations allow two types of uses: 1) those permitted as of right; and 2) those permitted only on a showing that certain conditions have been met. *Schultz v. Pritts*, 291 Md. 1, 20–21, 432 A.2d 1319 (1981). A person wishing to engage in the latter type of use must petition the appropriate zoning authority in order to do so, and the petition must show that all of the applicable conditions are met. *Id.* If all of the required conditions are

satisfied, the petitioner is given permission, otherwise known as a special exception, to engage in the conditional use. *Id.*

The difference between a special exception and a variance lies in the legislative approval of the underlying use. A special exception grants permission to engage in a use that the appropriate legislative authority has sanctioned under certain conditions. The special exception is an acknowledgement by the appropriate zoning authority that those conditions have been met. A variance, by contrast, grants permission to engage in a use that the appropriate legislative authority has otherwise proscribed. It represents a determination by the appropriate zoning authority that adherence to the letter of the applicable zoning regulations would result in extreme hardship to the property owner. *See Cromwell, supra,* 102 Md.App. at 699–703, 651 A.2d 424.

In the case *sub judice,* the Umerleys petitioned for a special exception to operate a Class II trucking facility on the subject property. For such a special exception to be granted, the Umerleys must show that all of the conditions established by the Baltimore County Council for operation of a Class II trucking facility are met.

The Umerleys cannot meet several of the applicable conditions. Accordingly, they have applied for variances from those conditions. As noted in the preceding section, however, the petition for those variances will not be successful. As stated *supra,* because the Umerleys failed to produce substantial evidence showing that the subject property is "unique," their variance requests must fail.

Whether the Umerleys could have obtained the special exception had they succeeded in obtaining the variances is an interesting question, and one that we recently noted. *See Chester Haven Beach Partnership v. Board of Appeals for Queen Anne's County,* 103 Md.App. 324, 336, 653 A.2d 532 (1995) (asking, "Does the legislative intent that the [conditional] use be permitted remain if the conditions are not met but are eliminated by an administrative body granting a variance?"; also noting that, under such circumstances, "the pre-

sumption that a conditional use is permitted may well fall by the wayside."). In *Chester Haven*, however, we did not reach that question because the petitioner was unable to acquire the requested variances. We said that, once "the variance process fails, the entire application fails." *Id.*

In the case *sub judice*, the Umerleys have failed in their attempt to acquire variances from the restrictions that must be met in order to operate a Class II trucking facility. Accordingly, their petition for a special exception to operate such a facility must also fail.

**JUDGMENT AFFIRMED. APPELLANTS TO PAY THE COSTS.**